UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:23-CV-45-BJB

STOR-MOR PORTABLE BUILDINGS, LLC                                    PLAINTIFF

v.

WESLEY DANIEL, ELITE PORTABLE BUILDINGS, INC.,
CHAMPION PORTABLE BUILDINGS, INC., and
CALVIN YODER, JR.                                                   DEFENDANTS

## STOR-MOR PORTABLE BUILDINGS, LLC'S
## FIRST AMENDED COMPLAINT

Comes the Plaintiff, Stor Mor Portable Buildings, LLC, by counsel, and for its First Amended Complaint against Defendants, Wesley Daniel, Elite Portable Buildings, Inc., Champion Portable Buildings, Inc., and Calvin Yoder, Jr., states as follows:

## PARTIES

1.     Plaintiff, Stor Mor Portable Buildings, LLC ("Stor Mor"), is and was at all times relevant hereto a Kentucky limited liability company with its principal office located at 1104 Paris Road, Suite 203, Mayfield, Kentucky 42066.

2.     Defendant Wesley Daniel ("Daniel") is and was at all times relevant hereto a resident of Moulton, Lawrence County, Alabama.

3.     Defendant Elite Portable Buildings, Inc. ("Elite") is and was at all times relevant hereto an Alabama corporation with its principal office located at 307 Rooks Street NW, Hartselle, Alabama 35640.

4.     Defendant Champion Portable Buildings, Inc. ("Champion") is and was at all times relevant hereto an Alabama corporation with its principal office located at 746 County Road 187 Danville, Alabama 35619.

1

5. Defendant Calvin Yoder, Jr. ("Yoder") is and was at all times relevant hereto a resident of Danville, Lawrence County, Alabama.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over Elite and Yoder because the parties agreed by the subject Manufacturing Agreement to submit to the jurisdiction of this Court; this Court has personal jurisdiction over Daniel, Elite, Champion, and Yoder because they have caused tortious injury to Stor Mor in Kentucky; and this Court has personal jurisdiction over Daniel, Elite, and Yoder because they have transacted business in Kentucky, and this action arises out of same.

7. This Court has subject matter jurisdiction over this case as the amount in controversy exceeds the minimum jurisdictional amount.

8. Venue is appropriate in Graves County, as the contracts at issue in this case were to be performed in Graves County, the Manufacturing Agreement contains a forum selection clause selecting Graves County, and the torts described in this action were committed against a business having its principal office in Graves County.

## FACTS

9. Stor Mor sells wooden sheds and outdoor structures ("Portable Buildings") to the general public.

10. Stor Mor purchases Portable Buildings from independent manufacturers.

11. Stor Mor sells Portable Buildings through a network of roadside dealers.

12. Stor Mor sells Portable Buildings either by cash sale or by lease pursuant to a rent-to-own contract.

13. Stor Mor employs several territory sales managers. Each territory sales manager is responsible for setting up lots, training dealers on Stor Mor's sales practices and software,

communicating with manufacturers about sales orders and trends, and in general acting as Stor Mor's local "face" in a specific region.

14. Stor Mor requires that its territory sales managers sign non-competition agreements due to the close personal relationship that each territory sales manager fosters with dealers, manufacturers, and the drivers that haul Portable Buildings.

15. Stor Mor employed Daniel to act as a territory sales manager in Alabama.

16. Daniel signed a Non-Compete Agreement with Stor Mor on November 5, 2019. A copy of the Non-Compete Agreement is attached as **Exhibit 1**.

17. Under the terms of the Non-Compete Agreement, Daniel was not to compete with Stor Mor during his employment and for a period of two years following the end of his employment.

18. Under the terms of the Non-Compete Agreement, Daniel is obligated to pay Stor Mor's costs and reasonable attorney's fees incurred in this action.

19. Daniel signed a Non-Disclosure Agreement with Stor Mor dated November 5, 2019. A copy of that agreement is attached hereto as **Exhibit 2**.

20. Pursuant to this Non-Disclosure Agreement, Daniel is obligated to refrain from disclosing any trade secrets regarding Stor Mor, including Stor Mor's processes, customer lists, pricing data, sources of supply, and marketing strategies.

21. Under the terms of the Non-Disclosure Agreement, Daniel is obligated to pay Stor Mor's costs and reasonable attorney's fees incurred in this action.

22. Stor Mor entered into a Manufacturing Agreement with Elite on October 8, 2019. A copy of the Manufacturing Agreement is attached as **Exhibit 3**.

23. Pursuant to the Manufacturing Agreement, Elite agreed to construct new Portable Buildings exclusively for Stor Mor.

24. Pursuant to the Manufacturing Agreement, Elite is obligated to assign to Stor Mor all rent-to-own contracts Elite generates from the sale of Portable Buildings. This obligation extends for a period of five years following termination of the Manufacturing Agreement.

25. Pursuant to the Manufacturing Agreement, Elite agreed that during the term of the Manufacturing Agreement, and for one year thereafter, Elite would not sell, lease, rent, or attempt to sell, lease, or rent inventory through any lot or dealer that sold, leased, or rented Portable Buildings for Stor Mor.

26. Yoder is the owner of Elite.

27. On August 24, 2021, Daniel and Yoder incorporated a new company, Champion, with the Alabama Secretary of State.

28. Daniel and Yoder designated Champion's "Nature of Business" with the Alabama Secretary of State as "CONSTRUCTION OF STORAGE BUILDINGS."

29. Daniel and Elite continued their business relationship with Stor Mor for approximately six months while Daniel and Yoder made preparations to compete with Stor Mor through Champion.

30. Champion directly competes with Stor Mor. Specifically, Champion is also engaged in the sale or lease of Portable Buildings to the general public.

31. Champion purchases Portable Buildings manufactured by Elite.

32. Daniel and Yoder have solicited Stor Mor dealers to sell Portable Buildings on behalf of Champion. These dealers include, but are not limited to:

      a. Cal Yo Buildings in Cullman, Alabama;

      b. Elite Portable Buildings in Moulton, Alabama;

      c. Quality Outdoor Products in Decatur, Alabama;

      d. W&W Buildings & Outdoors in Albertville, Alabama;

      e. Southern Storage of Slocumb in Slocumb, Alabama;

      f. Southern Storage of Blountstown in Blountstown, Florida; and

      g. Southern Storage of Marianna in Marianna, Florida.

33. Each of these dealers sold Portable Buildings for Stor Mor immediately prior to entering into a business relationship with Champion.

## COUNT I: BREACH OF CONTRACT (NON-COMPETITION AGREEMENT) – WESLEY DANIEL

34. Plaintiff restates, reiterates, and readopts the preceding paragraphs as if fully restated herein.

35. Daniel executed a written Non-Competition Agreement with Stor Mor.

36. Daniel has breached that Non-Competition Agreement with Stor Mor, including but not limited to by engaging in the following actions:

      a. Establishing a competing business, Champion, with Yoder;

      b. Actively and continuously soliciting Elite to manufacture Portable Buildings for Champion; and

      c. Actively and continuously soliciting Stor Mor's dealers (including but not limited to Cal Yo Buildings, Elite Portable Buildings, Quality Outdoor Products, W&W Buildings & Outdoors, Southern Storage of Slocumb, Southern Storage of Blountstown, and Southern Storage of Marianna) to sell Portable Buildings for Champion.

5

37. As a result of the aforementioned actions of Daniel, Stor Mor has suffered and will continue to suffer monetary damages in an amount that exceeds the minimum jurisdictional requirement of this Court.

38. Additionally, Stor Mor is entitled to injunctive relief against Daniel to prohibit him from taking further actions in violation of the Non-Compete Agreement.

39. Pursuant to the terms of the Non-Compete Agreement, Daniel is obligated to pay Stor Mor's costs and attorney's fees incurred in this action.

## COUNT II: BREACH OF CONTRACT (NON-DISCLOSURE AGREEMENT) – WESLEY DANIEL

40. Plaintiff restates, reiterates, and readopts the preceding paragraphs as if fully restated herein.

41. Daniel executed a written Non-Disclosure Agreement with Stor Mor.

42. Daniel has breached this Non-Disclosure Agreement by disclosing to Champion, Elite, and Yoder trade secrets protected by the Non-Disclosure Agreement.

43. As a result of the aforementioned actions of Daniel, Stor Mor has suffered and will continue to suffer monetary damages in an amount that exceeds the minimum jurisdictional requirement of this Court.

44. Additionally, Stor Mor is entitled to injunctive relief against Daniel to prohibit him from taking further actions in violation of the Non-Disclosure Agreement.

45. Pursuant to the terms of the Non-Disclosure Agreement, Daniel is obligated to pay Stor Mor's costs and attorney's fees incurred in this action.

## COUNT III: BREACH OF DUTY OF LOYALTY – WESLEY DANIEL

46. Plaintiff restates, reiterates, and readopts the preceding paragraphs as if fully restated herein.

47. During the period that Daniel was an employee of Stor Mor, he owed Stor Mor a duty of loyalty, including but not limited to the duty to act in the interest of Stor Mor, the duty not to compete with Stor Mor while an employee of Stor Mor, and the duty to refrain from disclosing information to a third party for the benefit of the third party to the detriment of Stor Mor.

48. Daniel has breached this duty of loyalty.

49. As a result of the aforementioned actions of Daniel, Stor Mor has suffered and will continue to suffer monetary damages in an amount that exceeds the minimum jurisdictional requirement of this Court.

**COUNT IV: BREACH OF CONTRACT – ELITE PORTABLE BUILDINGS, INC.**

50. Plaintiff restates, reiterates, and readopts the preceding paragraphs as if fully restated herein.

51. Elite executed a written Manufacturing Agreement with Stor Mor.

52. Elite has breached that Manufacturing Agreement by actively and continuously soliciting Stor Mor's dealers to sell Portable Buildings for an entity other than Stor Mor.

53. Elite has breached that Manufacturing Agreement by failing to assign Stor Mor all rent-to-own contracts arising from Elite's lease of Portable Buildings.

54. Upon information and belief, Elite currently sells all rent-to-own contracts arising from Portable Buildings to another company and receives a premium for doing so.

55. As a result of the aforementioned actions of Elite, Stor Mor has suffered and will continue to suffer monetary damages in an amount that exceeds the minimum jurisdictional requirement of this Court.

56. Additionally, in conformity with the Manufacturing Agreement, Stor Mor is entitled to an assignment of all current and future rent-to-own contracts resulting from the sale of Elite's buildings for a period of five years following termination of the Manufacturing Agreement.

57. Finally, Stor Mor is entitled to injunctive relief against Elite to prohibit it from taking further actions in violation of the Manufacturing Agreement.

### COUNT V: TORTIOUS INTERFERENCE WITH CONTRACT – CHAMPION PORTABLE BUILDINGS, INC.

58. Plaintiff restates, reiterates, and readopts the preceding paragraphs as if fully restated herein.

59. Stor Mor has valid contracts with Daniel and Elite.

60. Champion has knowledge of these contracts.

61. Champion's actions did, and have, caused Daniel and Elite to breach their contracts with Stor Mor.

62. Champion's actions were, and are, intended to cause Daniel and Elite to breach their contracts with Stor Mor.

63. Champion's actions were intentional and improper and took advantage of information entrusted by Stor Mor in Champion's owners, Daniel and Yoder, to harm Stor Mor's business.

64. As a result of the aforementioned actions of Champion, Stor Mor has suffered and will continue to suffer monetary damages in an amount that exceeds the minimum jurisdictional requirement of this Court.

## COUNT VI: TORTIOUS INTERFERENCE WITH CONTRACT – CALVIN YODER

65. Plaintiff restates, reiterates, and readopts the preceding paragraphs as if fully restated herein.

66. Stor Mor has valid contracts with Daniel and Elite.

67. Yoder has knowledge of these contracts.

68. Yoder's actions did, and have, caused Daniel and Elite to breach their contracts with Stor Mor.

69. Yoder's actions were, and are, intended to cause Daniel and Elite to breach their contracts with Stor Mor.

70. As a result of the aforementioned actions of Yoder, Stor Mor has suffered and will continue to suffer monetary damages in an amount that exceeds the minimum jurisdictional requirement of this Court.

## COUNT VII: CONVERSION – ELITE PORTABLE BUILDINGS, INC.

71. Plaintiff restates, reiterates, and readopts the preceding paragraphs as if fully restated herein.

72. Customer Samuel Collins ordered a Side Utility-Z4 12" x 44" wooden building with serial number Z4-SU-1244-021422-70065 (the "Collins Building") from Stor Mor.

73. The Collins Building had a retail purchase price of $14,967.90.

74. Elite manufactured the Collins Building.

75. Stor Mor paid Elite for the Collins Building.

76. Stor Mor has demanded that Elite turn over possession of the Collins Building to Stor Mor.

77. Elite has never transferred possession of the Collins Building to Stor Mor.

78. Stor Mor has suffered a loss in the amount of $14,967.90 from Elite's actions.

## COUNT VIII: CIVIL CONSPIRACY – ALL DEFENDANTS

79. Plaintiff restates, reiterates, and readopts the preceding paragraphs as if fully restated herein.

80. Daniel, Elite, Champion, and Yoder have engaged in a civil conspiracy to injure Stor Mor's business, including but not limited to taking the following actions:

(a) soliciting and inducing Stor Mor's dealers to terminate their business relationship with Stor Mor and sell Portable Buildings for a competitor;

(b) inducing Stor-Mor's employee to terminate his business relationship with Stor Mor and work for a competitor;

(c) inducing Stor Mor's manufacturing facility to breach its agreement with Stor Mor;

(d) withholding from Stor Mor possession of Stor Mor's personal property so as to deprive Stor Mor of the value of that personal property..

81. Daniel, Elite, Champion, and Yoder's actions have been concerted and performed with the intent to accomplish an unlawful objective for the purpose of harming Stor Mor.

82. As a result of the civil conspiracy, Daniel, Elite, Champion, and Yoder are jointly and severally liable to Stor Mor for the damages suffered as a result thereof.

## COUNT IX: PUNITIVE DAMAGES – ALL DEFENDANTS

83. Plaintiff restates, reiterates, and readopts the preceding paragraphs as if fully restated herein.

84. The actions of Daniel, Elite, Champion, and Yoder have been oppressive, fraudulent, and/or malicious, entitling Stor Mor to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Stor Mor Portable Buildings, LLC prays for relief as follows:

a) Entry of an *ex parte* restraining order and/or a temporary injunction restraining Defendants from further actions in violation of their non-competition, non-solicitation, and manufacturing agreements;

b) Judgment in its favor and against the Defendants for compensatory damages;

c) Judgement in its favor and against the Defendants for punitive damages;

d) Pre- and post-judgment interest;

e) Plaintiff's costs and attorney's fees incurred herein;

f) Trial by jury; and

g) All other relief to which Plaintiff is entitled.

Respectfully submitted,

WHITLOW, ROBERTS, HOUSTON & STRAUB, PLLC

By /s/ Darren R. Smith
James R. Coltharp, Jr.
Darren R. Smith
300 Broadway
Post Office Box 995
Paducah, Kentucky 42002-0995
270-443-4516 (Telephone)
270-443-4571 (Facsimile)
jcoltharp@whitlow-law.com
dsmith@whitlow-law.com
*Attorneys for Plaintiff*

# EMPLOYEE NON-COMPETE AGREEMENT

FOR GOOD CONSIDERATION and as an inducement for:

| | | | |
|---|---|---|---|
| _____ | CEB INVESTMENTS | _____ | ELVIS LEASING |
| __/__ | ELVIS FINANCIAL SOLUTIONS | _____ | HEARTLAND CAPITAL |
| __✓__ | STOR-MOR | _____ | USA SERVICE FINANCE |
| _____ | GREENLIGHT/ CENTURY | _____ | CAMP-A-RAMA |

(the "Company") along with any of its affiliates to employ the undersigned employee. Employee hereby agrees and acknowledges to not compete, whether directly or indirectly, with the business of the Company, any of its affiliates, and its successors and assigns during the period of this Agreement.

The term "not compete" as used herein shall mean the Employee shall not own, manage, operate, consult or be employed in a business substantially similar to or competitive with, the present business of the Company or any of its affiliates or such other business activity in which the Company or any of its affiliates may substantially engage during the term of employment.

The Employee acknowledges the Company and any of its affiliates shall provide in accordance of this agreement employee access to trade secrets, customers and other confidential data and good will. Employee agrees to retain said information as confidential and not to use said information on his or her own behalf or disclose it to any third party.

This non-compete agreement shall apply geographically to the entire United States, considering that Company works globally and does not obtain any walk-in business. If the courts do not deem such as a proper scope; then the scope will be limited to the Commonwealth of Kentucky. If, the courts still deem such as too large of a scope then the non-compete will apply only for an aerial radius of 155 miles from the present location of the Company and any of its affiliates. This non-compete agreement shall be in force during Employee's employment with the Company and shall continue in full force and effect for two (2) years thereafter, commencing with the date of employment termination/resignation and notwithstanding the cause or reason for termination.

This agreement shall be binding upon and inure to the benefit of the parties, their successors, assigns, and personal representatives. The Company and any of its affiliates may notify any future or prospective employer or third party of the existence of this agreement, and shall be entitled to full injunctive relief for any breach or attempted brach. In the event of litigation or other action to enforce this Agreement, Employee agrees that the Company may, in addition to any other damages, recover from Employee its costs and reasonable attorney's fees and incurred in prosecuting such action.

Date __11/5/19__

Employee Signature _____

22

**EXHIBIT 1**

# EMPLOYEE NON-DISCLOSURE AGREEMENT

FOR GOOD CONSIDERATION, and in consideration of being employed by

| _____ CEB INVESTMENTS | _____ ELVIS LEASING |
| _____ ELVIS FINANCIAL SOLUTIONS | _____ HEARTLAND CAPITAL |
| ✓ STOR-MOR | _____ USA SERVICE FINANCE |
| _____ GREENLIGHT/ CENTURY | _____ CAMP-A-RAMA |

(The "Company") along with any of its affiliates, the undersigned employee hereby agrees and acknowledges:

1. That during the course of my employment, certain trade secrets may become available and seen of the Company and any of its affiliates; said trade secrets consisting but not necessarily limited to:

   (a) Technical information: Methods, processes, formulas, compositions, systems, techniques, inventions, machines, computer programs, and research projects.
   (b) Business information: Customer lists, pricing data, sources of supply, financial data, marketing, production, or merchandising systems or plans.

2. I shall not during my employment or at any time after the termination of my employment with the Company and any of its affiliates, use for myself or others, or disclose or divulge to any third party, including future employers, any trade secrets, confidential information, or any other proprietary data of the Company and any of its affiliates in violation of this agreement.

3. That upon the termination of my employment from the Company and any of its affiliates:
   (a) I shall return to the Company and any of its affiliates all documents and property of the Company and any of its affiliates, including but not necessarily limited to:

| Drawings | Blueprints | Reports of any kind | Manuals |
|---|---|---|---|
| Correspondence | Customer Lists | Computer Programs | Customer Tutorials |
| Contracts | Employee training guides | Keys | Door codes |
| Laptops/ computer/ printers | Filing cabinets in employee possession | Telephone belonging to company | Anything belonging to the company |

   (b) I further agree that I shall not retain copies, notes or abstracts of the foregoing either physically or electronically.

   (c) The Company and any of its affiliates may notify any future or prospective employer or third party of the existence of this agreement, and shall be entitled to full injunctive relief for any breach. In the event of litigation or other action to enforce this Agreement, I agree that the Company may in addition to any other damages, recover from me its costs and reasonable attorney's fees and incurred in prosecuting such action.

   (d) This agreement shall be binding upon me and my personal representatives and successors in interest, and shall inure to the benefit of the Company and any of its affiliates, its successors and assigns.

Date 11/5/19

Employee Signature [signature]

**EXHIBIT 2**



# MANUFACTURING AGREEMENT

This MANUFACTURING AGREEMENT (the "Agreement"), is entered into as of this _8_ day of _October_ 2019 (the "Effective Date") and is between:

STOR MOR PORTABLE BUILDINGS, LLC,
A Kentucky limited liability company with its address at
1104 Paris Rd Suite 202, Mayfield, KY 42066
("Stor-Mor")

and

Elite Portable Buildings (Evergreen Location),
A Incorporated Company with its address at
__746 CR 187 Danville__, _AL_, 35619
("Manufacturer")

The parties agree as follows:

I. **SERVICES.** Manufacturer shall build new portable buildings ("Inventory") exclusively for Stor-Mor (the "Services"). Manufacturer shall build Inventory as ordered by Stor-Mor or by its designees, including lots or dealers, provided Stor-Mor has approved these designees in writing and not withdrawn such approval. The parties may agree in writing to add additional tasks to these Services, including those set forth in Exhibit A.

II. **COMPENSATION.**

1. Manufacturer shall submit invoices to Stor-Mor for Services as follows:
    a) Manufacturer shall charge Stor-Mor 75% of the mutually agreed upon manufacturer's suggested retail price ("MSRP") for Inventory (the "Compensation").
    b) Manufacturer shall submit invoices weekly showing the amount of Inventory built by Manufacturer and amount due by Stor-Mor.

2. Stor-Mor shall settle invoices with Manufacturer and pay settled charges for completed work orders every Friday.

3. The MSRP for Inventory is attached hereto as Exhibit B. Both parties must agree in writing upon any modification to MSRP. The parties understand and acknowledge that the MSRP may differ from the retail price at which Inventory is sold by lots or dealers.

**EXHIBIT 3**

4. In the event that this Agreement is terminated prior to completion of the Services but where the Services have been partially performed, Manufacturer shall be entitled to pro rata payment of the Compensation accrued and unpaid to the date of termination provided that there has been no breach of contract on the part of the Manufacturer.

5. Manufacturer will not be reimbursed for any expenses incurred in connection with providing Services or performing its obligations under this Agreement.

III. **MANUFACTURER SALE OF INVENTORY TO THIRD-PARTIES.** Manufacture shall build Inventory exclusively for Stor-Mor in accordance with Section I above. Notwithstanding the foregoing, Manufacturer may manufacture and sell Inventory directly to retail customers under Manufacturer's own branding. If Manufacturer sells Inventory to retail customer and a retail customers purchases that Inventory through a retail installment contract ("RIC") or rent-to-own contract ("RTO Contract"), then Manufacturer shall sell or assign for management the RIC and/or RTO Contract to Stor-Mor or its designees, which include Heartland Capital Investments, LLC ("Heartland") and Green Light Finance, LLC ("Green Light"). Manufacturer shall use the forms for RTO Contracts or RICs provided by Stor-Mor or its designees, including Heartland and Green Light.

IV. **TERM OF AGREEMENT.**

1. **Term.** The term of this Agreement shall commence on Effective Date and will remain in full force and effect for five years thereafter (the "Initial Term"). After the Initial Term, the term of this Agreement shall renew for successive one-year terms ("Successive Terms") until terminated by either party in accordance with the below provisions.

2. **Termination for Cause.** During the Initial Term, either party may terminate this Agreement for cause by first giving written notice to the other party and stating the breach of this Agreement as grounds for termination. The party receiving notice shall have 30 days to cure said breach. If the party receiving notice is unable to cure said breach, then the party providing notice may terminated this Agreement after the 30th day after it provided initial notice.

3. **Termination for Convenience.** During the Successive Terms, Manufacturer may terminate this Agreement by providing 90 days written notice of termination, with such termination being for any reason or no reason. During the Initial Term and Successive Terms, Stor-Mor may terminate this Agreement by providing 90 days written notice of termination, with such termination being for any reason or no reason

4. **Survival.** All terms of this agreement which must survive to carry out their effect shall survive termination. Manufacturer's obligation Section III shall survive and continue for five years after the termination of this Agreement. Furthermore, all Inventory which Manufacturer sells after the termination of this Agreement, whether to a retail customer, lot, dealer, or other entity, will be subject to Manufacturer's obligation under Section III, and Manufacturer. Manufacturer shall sell or assign for management the RIC and/or RTO Contract to Stor-Mor or its designees, including Heartland and Green Light, and shall use use the forms for RTO Contracts or RICs provided by Stor-Mor or its designees, including Heartland and Green Light. For five years following the termination of this Agreement, Manufacturer shall inform each third party who intends to sell Inventory that such

2

Inventory, if sold pursuant to a RTO Contract or RIC, must be sold or assigned for management to Stor-Mor or its designees, including Heartland and Green Light, and Manufacturer shall require such third party purchasers to enter into a purchase or management agreement with Stor-Mor or its designee prior to selling Inventory to that third party.

V. **INDEPENDENT CONTRACTORS.** The parties relationship is that of independent contracts. Nothing in this Agreement shall be construed to create a partnership, joint venture, agency or employer-employee relationship. Stor-Mor is not required to pay, or make any contributions to, any social security, local, state or federal tax, unemployment compensation, workers' compensation, insurance premium, profit-sharing, pension or any other employee benefit for the Manufacturer. The Manufacturer is responsible for paying, and complying with reporting requirements for, all local, state and federal taxes related to payments made to the Manufacturer under this Agreement.

VI. **NON-SOLICITATION.** During the term of this Agreement and for one year thereafter, Manufacturer will not sell, lease, rent, or attempt to sell, lease, or rent Inventory through any lot or dealer which sells, leases, or rents Inventory for Stor-Mor.

VII. **OWNERSHIP OF INTELLECTUAL PROPERTY.** All intellectual property and related material (e.g. blueprints for buildings) (the "Intellectual Property") that Manufacturer develops or produces under this Agreement will be the property of Manufacturer. Manufacturer grants Stor-Mor a non-exclusive general license to use this Intellectual Property.

VIII. **CONFIDENTIALITY.**

1. Confidential information (the "Confidential Information") refers to any data or information relating to the business of the Stor-Mor which would reasonably be considered to be proprietary to Stor-Mor including, but not limited to, accounting records, business processes, and client records and that is not generally known in the industry of Stor-Mor and where the release of that Confidential Information could reasonably be expected to cause harm to Stor-Mor.

2. Manufacturer shall not disclose, divulge, reveal, report or use, for any purpose, any confidential information which Manufacturer has obtained, except as authorized by Stor-Mor or as required by law. The obligations of confidentiality will apply during the term of this Agreement and will end on the termination of this Agreement except in the case of any Confidential Information which is a trade secret in which case those obligations will last indefinitely.

3. All written and oral information and material disclosed or provided by Stor-Mor to Manufacturer under this Agreement is Confidential Information regardless of whether it was provided before or after the date of this Agreement or how it was provided to Manufacturer.

IX. **INDEMNIFICATION.** Manufacturer agrees to indemnify and hold harmless Stor-Mor and its respective directors, shareholders, affiliates, officers, agents, employees, and permitted successors and assigns against any and all claims, losses, damages, liabilities,

3

penalties, punitive damages, expenses, reasonable legal fees and costs of any kind or amount whatsoever, which result from or arise out of any act or omission of the Manufacturer, its respective directors, shareholders, affiliates, officers, agents, employees, and permitted successors and assigns that occurs in connection with this Agreement. This indemnification will survive the termination of this Agreement.

X. **RETURN OF PROPERTY.** Upon the termination of this Agreement, Manufacturer shall return to Stor-Mor any property, documentation, or records belonging to Stor-Mor.

XI. **MISCELLANEOUS.**

1. **Notices.** All notices and other communications required or permitted by this Agreement shall be in writing and will be effective, and any applicable time period shall commence, when (a) delivered to the following address by hand or by a nationally recognized overnight courier service (costs prepaid) addressed to the following address or (b) transmitted electronically to the following per facsimile numbers or e-mail addresses provided by each, in each case marked to the attention of the Person (by name or title) designated below (or to such other address, facsimile number, e-mail address, or Person as a party may designate by notice to the other parties):

    a) For Stor-Mor:

    Darren Warren
    Stor-Mor Portable Buildings, LLC
    1104 Paris Road Suite 202
    Mayfield, KY 42066

    b) For Manufacturer:

    <u>Calvin Yoder JR.</u>
    <u>Elite Portable Buildings, INC.</u>
    <u>746 CR 187</u>
    <u>Danville, AL 35619</u>

2. **Assignment.** This Agreement may not be assigned by either party hereto without the prior written consent of the other party. This Agreement shall be binding on and shall inure to the benefit of the parties hereto and their respective legal representatives, heirs, successors, and permitted assigns.

3. **Time is of the Essence.** Time is of the essence in this Agreement. No extension or variation of this Agreement will operate as a waiver of this provision.

4. **Currency.** Except as otherwise provided in this Agreement, all monetary amounts referred to in this Agreement are in USD (US Dollars).

4

5. **Expenses.** Each of the parties shall pay all costs and expenses (including attorneys' fees and accountants' fees) incurred or to be incurred by each party in negotiating, preparing, and carrying out the transaction contemplated by this Agreement.

6. **Entire Agreement; Modification; Waiver.** This Agreement constitutes the entire agreement between the parties pertaining to the subject matter contained herein and supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment of this Agreement shall be binding unless executed in writing by both parties hereto. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the waiving party.

7. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the Kentucky. The Parties submit to the jurisdiction of Kentucky and shall assert any claim arising under this Agreement solely in a state court located in Graves County, Kentucky or federal court located in the Western District of Kentucky.

8. **Survival.** All representations warranties, covenants and agreements made by the parties in this Agreement or pursuant hereto shall survive the Closing for as long as is provided in any applicable statute of limitations.

9. **Counterparts; Facsimile Signatures.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which, when taken together, shall constitute one and the same instrument, and this Agreement shall become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, as otherwise provided herein. Facsimile signatures shall be accepted as originals.

In Witness Whereof, the parties have executed this Agreement on the date set forth below.

STOR MOR PORTABLE BUILDINGS, LLC    [MANUFACTURER]

By: Darren Warren                    By: *[signature]*
Title: Owner                         Title:
       Owner
Date: 10/08/2019                     Date: 10/08/2019

5